**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

IESHIA PAUL-EDWARDS,
    Plaintiff,

v.

    Case No. 3:25-cv-03270-JEH-RLH

DEREK HEINZ, *et al.*,
    Defendants.

## Order

This matter is now before the Court on Defendant John Sokol's Motion to Dismiss and Defendants Latoya Hughes, Justin Hammers, Ryan Nottingham, Jean Marie Case, Melinda Eddy, Michael Long, Sarah Taapken, Benjamin Estes, Janeen Wright, Jicole Hickle, Josh Christine, Myron Neisler, James Harvey, Marsha Mibbs, Araceli Cabarcas, Tiona Farrington, Stephany Trejos, Natasha Dillard, David Brainard, Shelbi Rentmeister (a/k/a Shelbi Russell), Heidi Browne, Latisha O'Neal, Danielle Mitchell, Kit Clapp, Luke Fairless, Chad McGinnis, Tasha Young, Elaine Worth, Cammi Pierce, Abbey Venturini, Marrisa Hayes, Steven Moore, James Settles, and J. Bergschneider's (the "IDOC Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Docs. 118, 119). For the reasons stated below, Defendant Sokol's Motion is granted and the IDOC Defendants' Motion is granted in part and denied in part.

**I**

On September 12, 2025, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging Defendants violated her constitutional rights when she was incarcerated at Logan Correctional Center ("Logan"). (Doc. 1). Plaintiff alleges Defendant Derek Heinz, a correctional officer, allegedly "began a pattern of grooming her"

1

in the fall of 2022. *Id.* at ¶ 1. Defendant Heinz allegedly used his position of power to prevent Plaintiff from talking to her children's father, controlled her day-to-day activities, "regularly told [Plaintiff] about the sexual activities he wanted to do with her," and "pressure[d] her to expose herself." *Id.* at ¶¶ 1, 51, 53. Plaintiff alleges Defendant Heinz had been assigned to "tower duty" because of a prior inappropriate relationship with another prisoner, but he was eventually placed back on regular correctional duty. *Id.* at ¶¶ 41–42.

On an unspecified date, Defendant Heinz allegedly sexually assaulted Plaintiff. *Id.* at ¶¶ 1, 53-54. During wing check, Defendant Heinz came to Plaintiff's cell and pressured her to expose herself. *Id.* at ¶ 53. Plaintiff removed her towel, exposing her naked vagina and buttocks. *Id.* Defendant Heinz "glided his hand along [Plaintiff's] leg and his thumb next to her vagina. Defendant Heinz did not seek or receive permission to touch Plaintiff." *Id.* at ¶ 54.

Plaintiff named thirty-five additional Defendants who allegedly "knew or should have known about an ongoing problem of sexual misconduct and abuse by officers at Logan" and "could have taken steps to address" an alleged "culture of sexual misconduct and abuse." *Id.* at ¶¶ 32-33. These Defendants include the following:

- **Latoya Hughes**, the Director of the Illinois Department of Corrections ("IDOC"), was responsible for statewide oversight of IDOC facilities, including promulgating and enforcing policies, supervising staff conduct and training, and ensuring the safety of individuals in IDOC custody, including addressing the alarmingly high number of sexual abuse allegations at Logan, some of which were referred to the Illinois State Police for investigation. *Id.* at ¶¶ 7, 21–22, 97.
- **Justin Hammers**, the IDOC Chief of Operations, oversaw security staff across IDOC facilities and was responsible for ensuring correctional officers

2

were properly trained and conducted themselves in accordance with applicable laws and institutional standards, including by preventing and remedying sexual abuse and misconduct at Logan. *Id*. at ¶¶ 8, 97.

- **Ryan Nottingham**, the Prison Rape Elimination Act of 2003 ("PREA") Coordinator, was responsible for developing, implementing, and overseeing policies and training to prevent and respond to sexual abuse in IDOC facilities, maintaining PREA compliance systems, and preparing annual PREA reports evaluating institutional safety and compliance. *Id*. at ¶¶ 9, 97.

- **Jean Marie Case, Melinda Eddy, and Michael Long**, who held the position of Warden, Acting Warden, Assistant Warden, and/or Day-to-Day Warden of Logan (hereinafter, the "Warden Defendants"), were responsible for the daily operation and supervision of Logan, including staff supervision, policy implementation, discipline, compliance with PREA standards, staffing levels, and ensuring adequate monitoring to protect prisoners from sexual abuse by staff. *Id*. at ¶¶ 10, 98. Defendants Eddy and Long were also members of the PREA Incident Review Team. *Id*. at ¶¶ 13, 99.

- **Sarah Taapken, Benjamin Estes, and Janeen Wright** (hereinafter, the "PREA Compliance Manager Defendants") were responsible for overseeing facility-level efforts to prevent and address sexual abuse, ensuring compliance with PREA standards, and developing and monitoring institutional responses to allegations of staff misconduct. *Id*. at ¶¶ 11, 99. Defendant Wright, in her role as PREA Retaliation Monitor for Logan, was also responsible for monitoring and preventing retaliation against prisoners who reported sexual abuse and ensuring the safety of individuals who made PREA complaints. *Id*. at ¶¶ 12, 99.

3

- **Benjamin Estes, Kit Clapp, Chad McGinnis, Tasha Young, and Elaine Worth**, who were Internal Affairs Officers (hereinafter, the "Internal Affairs Officer Defendants"), were responsible for investigating allegations of staff sexual misconduct, issuing findings, recommending disciplinary action, and ensuring institutional responses to PREA complaints were appropriate and compliant and were members of the PREA Incident Review Team. *Id.* at ¶¶ 13-14, 99-100.

- As members of the PREA Incident Review Team, **Jicole Hickle, Josh Christine, Myron Neisler, James Harvey, Marsha Mibbs, Araceli Cabarcas, Tiona Farrington, Stephany Trejos, Natasha Dillard, David Brainard, Shelbi Rentmeister (a/k/a Shelbi Russell), Heidi Browne, Latisha O'Neal, Danielle Mitchell, Luke Fairless, Cammi Pierce, Abbey Venturini, and Dr. John Sokol** (hereinafter, the "PREA Incident Review Team Defendants") were responsible for reviewing sexual abuse allegations at Logan, evaluating institutional responses, recommending policy changes to address systemic risks, and ensuring ongoing compliance with PREA standards. *Id.* at ¶¶ 13, 99. Defendant Sokol is a Regional Clinical Psychologist employed by Wexford Health Sources, Inc.

- **Marrisa Hayes, Steven Moore, James Settles, and J. Bergschneider** were correctional officers at Logan responsible for supervising prisoners within housing units and reporting observed staff misconduct or behavior posing a risk of sexual abuse. *Id.* at ¶ 15.

Plaintiff asserts "[m]any officers and prisoners observed Defendant Heinz and Plaintiff's interactions when Defendant Heinz was assigned to work at the tower." *Id.* at ¶ 69. Plaintiff alleges Defendants Moore, Settles, and Bergschneider advised her "to 'stay away' from" Defendant Heinz but did not report any "inappropriate interactions they observed." *Id.* at ¶ 70. Plaintiff alleges Defendant

4

Hayes told her "the 'tower situation was getting out of hand' and that she should break off her relationship with . . . Heinz before one of them gets hurt," and warned Plaintiff not "to tell her things that she 'would have to report.'" *Id*. at ¶ 71.

In Counts II and III of her Complaint, Plaintiff alleges Hughes, Hammers, Nottingham, the Warden Defendants, the PREA Compliance Manager Defendants, the Internal Affairs Officer Defendants, and the PREA Incident Review Team Defendants violated her Eighth Amendment rights by failing to protect her from Heinz (Count II) and failing to adequately train and supervise Logan staff (Count III). *Id*. at ¶¶ 91-107. In Count IV, Plaintiff alleges Defendants Hayes, Moore, Settles, and Bergschneider violated her Eighth Amendment rights by failing to protect her from Heinz. *Id.* at ¶¶ 108-112. In Count VI, Plaintiff brings a state law claim for willful and wanton conduct against all Defendants except for correctional officers Hayes, Moore, Settles, and Bergschneider. *Id.* at ¶¶ 117-119.

On January 26, 2026, Defendant Sokol filed a Motion to Dismiss Counts II, III, and VI. (Doc. 118). On January 28, 2026, the IDOC Defendants filed a Motion to Dismiss Counts II, III, IV, and VI. (Doc. 119). On March 12, 2026, Plaintiff filed a Response to Defendants' Motions to Dismiss. (Doc. 124). On March 26, 2026, Defendant Sokol filed a Reply. (Doc. 127). On April 10, 2026, the IDOC Defendants filed a Reply. (Doc. 130).

## II

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *United States ex rel. Berkowitz v.*

5

*Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). "A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The pleading standard in Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 at 556).

### III

### A

Defendant Sokol and the IDOC Defendants argue Plaintiff failed to state a failure to protect claim in Counts II and IV because she did not allege a plausible basis to show that they were deliberately indifferent to a known risk of harm in violation of the Eighth Amendment. Plaintiff argues she plausibly alleges Defendants knew she faced "a substantial risk of serious harm," *i.e.*, a risk of sexual assault, and they "disregard[ed] that risk by failing to take reasonable measures to abate it." (Doc. 124 at p. 16) (citing *Farmer v. Brennan*, 511 U.S 825, 847 (1994)).

Prison officials violate the Eighth Amendment when they act with deliberate indifference to "an excessive risk to inmate health or safety." *Farmer*, 511 U.S at 837. The risk of harm to which the prisoner was subjected must be objectively serious. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). "[I]t does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons

personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "If a plaintiff presents evidence that a risk of attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it,' then an inference of actual knowledge of a substantial risk of harm may be permissible." *Doe v. Macleod*, No. 18-3191, 2023 WL 2698672, at *9 (C.D. Ill. Mar. 29, 2023) (quoting *Farmer*, 511 U.S. at 843). "A general risk of harm is not enough to establish the existence of a substantial risk." *Doe,* 2023 WL 2698672, at *9 (citing *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011)); *see also Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005) ("[A] risk is not rendered general merely because it is not personal to plaintiff.").

As a threshold matter, there is no dispute that Plaintiff alleges she was exposed to an objectively serious harm. Defendants concede that "[u]nwanted sexual contact between a prison official and prisoner is objectively harmful under the Eighth Amendment." (Doc. 119-1 at p. 8) (quoting *Walton v. Nehls*, 135 F.4th 1070, 1073 (7th Cir. 2025)). The issue here is whether Plaintiff adequately alleges the subjective element of her failure to protect claim.

In Count II, Plaintiff alleges Hughes, Hammers, Nottingham, the Warden Defendants, the PREA Compliance Manager Defendants, the Internal Affairs Officer Defendants, and the PREA Incident Review Team Defendants were aware of other past instances of sexual misconduct and abuse, "a systemic sexual assault

problem" at Logan, and the "custom, policies, and practices at Logan that permitted sexual misconduct and abuse to flourish." (Doc. 1 at ¶ 93). Plaintiff alleges Defendants "had actual knowledge of this pattern of sexual abuse, had the realistic opportunity to intervene to prevent or stop the misconduct from occurring, and failed to take reasonable measures to remedy the violations." *Id.* at ¶ 94. Plaintiff also alleges Defendants "were also on notice of Defendant Heinz's sexual misconduct," because on "information and belief," he "was assigned to the tower because of his inappropriate conduct with another incarcerated woman," or alternatively, that "these Defendants were on notice of a substantial risk of harm to [Plaintiff] and they consciously disregarded that risk." *Id.* at ¶¶ 95-96.

Defendant Sokol argues Plaintiff fails to state an Eighth Amendment failure to protect claim in Count II because simply being a member of the IDOC's PREA Incident Review Committee is not enough to establish actual knowledge of a risk to Plaintiff. The IDOC Defendants argue that "[g]eneral awareness of past harms, including the fact that sexual abuse incidents have occurred at Logan or other Department facilities, does not state a claim for deliberate indifference." (Doc. 119-1 at p. 10).

Defendants are correct that "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). The doctrine of *respondeat superior* (a doctrine whereby a supervisor may be held liable for an employee's actions) has no application to § 1983 actions. *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). That is not to say, however, that a supervisor may never be held liable under § 1983 for his or her subordinate's actions. In order for a supervisor to be held liable under § 1983 for the actions of his subordinates, the supervisor must "approve[] of the conduct and the basis for it." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Gentry v.*

8

*Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.") (internal quotation omitted). "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 870 (7th Cir. 2011) (quoting *Chavez*, 251 F.3d at 651)). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.

Plaintiff alleges Logan had a documented, multi-year pattern of staff sexual abuse; Defendants received repeated notice of that abuse through PREA complaints, audits, investigations, and litigation; and institutional conditions enabling grooming and assault remained uncorrected. (Doc. 1 at ¶¶ 97–100). Plaintiff alleges there were over 100 staff-perpetrated abuses reported between 2020 and 2024, eighty-five PREA complaints made by prisoners against Logan staff for sexual abuse, misconduct, and assault between January 2021 to June 2025, and only six staff members received any disciplinary action. *Id*. at ¶¶ 21–23. The IDOC Defendants argue there was only one substantiated staff-on-inmate assault at Logan in 2022, when Plaintiff's sexual assault may have occurred. Thus, Defendants assert Plaintiff failed to "plead facts to plausibly show that the named Defendants had or even should [have] had general knowledge of a pervasive problem of staff-on-prisoner sexual assaults at Logan." (Doc. 119-1 at p. 11).

Plaintiff does not allege that Hughes, Hammers, Nottingham, the Warden Defendants, the PREA Compliance Manager Defendants, the Internal Affairs Officer Defendants, and the PREA Incident Review Team Defendants were aware of Heinz's past misconduct involving another inmate, his assignment to tower

9

duty, his alleged grooming of Plaintiff, and the sexual assault upon Plaintiff. Plaintiff argues she is entitled to discovery to develop her claims, but before proceeding, Plaintiff is first required to "allege facts sufficient to show 'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis*, 107 F.3d at 553); *Farmer*, 511 U.S. at 837-38. "Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). The Court finds Plaintiff has not alleged sufficient facts to proceed on a failure to protect claim against the supervisory Defendants. Count II is dismissed without prejudice and with leave to amend.

In Count IV, Plaintiff alleges Defendants Hayes, Moore, Settles, and Bergschneider knew of Defendant Heinz's past sexual misconduct and "were each on notice of numerous instances where Defendant Heinz behaved inappropriately towards [Plaintiff]." (Doc. 1 at ¶ 110). Plaintiff alleges Defendants Moore, Settles, and Bergschneider warned her to "stay away" from Heinz, but they took no action to report the inappropriate interactions they observed or to otherwise intervene. *Id*. at ¶ 70. Plaintiff further alleges that when she approached Defendant Hayes, a crisis-trained female officer, about Defendant Heinz, Defendant Hayes told her the "tower situation was getting out of hand" and to end the relationship before someone got hurt. *Id*. at ¶ 71. Defendant Hayes also allegedly told Plaintiff not to tell her things about the relationship that she "would have to report." *Id*.

The IDOC Defendants argue Plaintiff fails to state a claim against correctional officers Hayes, Moore, Settles, and Bergschneider because she does not allege that they knew about the "unwanted sexual contact" by Defendant Heinz. (Doc. 119-1 at p. 16). Although Plaintiff does not allege that Defendants

10

knew Heinz touched her groin, Plaintiff's allegations permit the reasonable inference that they knew the relationship was inappropriate, that this behavior posed a substantial risk of harm to Plaintiff, and consciously disregarded that risk. (Doc. 1 at ¶¶ 70–71, 111). At this early stage, the Court finds Plaintiff has plausibly alleged a failure to protect claim against Defendants Hayes, Moore, Settles, and Bergschneider.

**B**

Defendant Sokol argues Count III (failure to train) fails to state a claim because individuals are not liable for claims asserting municipal liability, and there is no *respondeat superior* liability under § 1983. The IDOC Defendants argue Plaintiff does not allege a basis to hold any supervisory Defendant liable for failing to train subordinates.

Failure to train claims are typically brought against municipal corporations, not individual state actors, and some courts have held that "in the Eighth Amendment context, such claims may be maintained only against a" municipal corporation pursuant to some policy, as recognized in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978), not state employees in their individual capacities. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (noting "failure to train claims are usually maintained against municipalities, not against individuals," and "in the Eighth Amendment context, such claims may only be maintained against a municipality.").

Some courts have recognized instances where a state employee with a supervisory position could be liable "for failing to train correctional officials if the supervisor is aware of problems with training and that those issues would result in harm." *See e.g., Michel v. Pretorius*, No. 24-cv-00588, 2025 WL 1827944, at *5 (S.D. Ind. July 2, 2025) (citing *Sinn v. Lemmon*, 911 F.3d 412, 423 (7th Cir. 2018)). *Sinn* ruled that this could include a claim against a supervisor who is "responsible for

11

setting prison policy" was aware of "a systematic lapse in enforcement of a policy critical to ensuring inmate safety yet fail[ed] to enforce that policy," but it also confirmed that "isolated incidents" do not suffice. *Id.*

A deliberate indifference claim premised on a supervisor's alleged "failure to train" a subordinate employee is "extremely limited" and requires the plaintiff to allege facts plausibly showing that the supervisor knew that their failure to train the subordinate would cause constitutional injury. *See Sharp v. Miller*, No. 25-cv-1139, 2025 WL 1372971, at *4 (C.D. Ill. May 12, 2025). "Negligence, or a 'should have known' standard, is not enough. Rather, the plaintiff must show that the defendant knew that his failure to train was likely to lead to constitutional violations." *Ghashiyah v. Frank*, No. 07-C-308-C, 2007 WL 5517455, at *2 (W.D. Wis. Aug. 1, 2007) (citations omitted).

Here, Plaintiff alleges Hughes, Hammers, Nottingham, the Warden Defendants, the PREA Compliance Manager Defendants, the Internal Affairs Officer Defendants, and the PREA Incident Review Team Defendants were "on notice of numerous instances of sexual misconduct and abuse by prison staff directed at Logan prisoners . . . [and] were responsible for training IDOC staff to prevent and respond to sexual misconduct and abuse." (Doc. 1 at ¶ 106). Plaintiff's allegations regarding Defendants' "failure to train" are too conclusory to state a plausible claim for relief. Plaintiff sets forth no facts that conduct by the individual Defendants caused the alleged deprivation of Plaintiff's constitutional rights. *Sanville*, 266 F.3d at 739-40. Count III is dismissed without prejudice and with leave to amend.

### C

In Count VI, Plaintiff alleges the Defendants, except Hayes, Moore, Settles, and Bergschneider, are liable under Illinois law based on their alleged "willful and wanton conduct." (Doc. 1 at p. 24). Specifically, Plaintiff alleges "Defendants'

12

actions were willful and wanton and demonstrated an utter indifference to the safety of [Plaintiff] and other prisoners. Defendants were aware of or deliberately indifferent to the fact that their conduct posed a risk to Plaintiff's safety and recklessly disregarded that risk." *Id.* at ¶ 118. Plaintiff further alleges that "[a]s a direct and proximate result of Defendant Heinz, Defendant Hughes, Defendant Hammers, Defendant Nottingham, the Warden Defendants, PREA Compliance Manager Defendants, PREA Retaliation Monitor Defendant, PREA Incident Review Team Defendants, Internal Affairs Officer Defendants' willful and wanton misconduct, [Plaintiff] suffered injuries, including physical and psychological injuries and severe emotional distress." *Id.* at ¶ 119.

Defendant Sokol argues Count VI should be dismissed because "willful and wanton conduct" is not a cause of action under Illinois law. The IDOC Defendants argue Count VI should be dismissed pursuant to Rule 12(b)(1) because it is barred by the State Lawsuit Immunity Act, which provides that "[t]he State of Illinois shall not be made a defendant or party in any court," subject to certain exceptions not applicable here. 745 ILCS 5/1. Alternatively, the IDOC Defendants argue Count VI should be dismissed under Rule 12(b)(6) because Plaintiff fails to state a claim against them for willful and wanton conduct. Plaintiff argues she adequately alleges a cognizable claim for willful and wanton conduct because she stated claims of deliberate indifference.

"Illinois courts have consistently held that there is no separate and independent tort of willful and wanton misconduct in the common law of this state." *Sparks v. Starks*, 367 Ill.App.3d 834, 837 (1st Dist. 2006) (citing *Ziarko v. Soo Line R.R. Co.*, 161 Ill.2d 267, 274 (1994); *Morrow v. L.A. Goldschmidt Associates, Inc.*, 112 Ill.2d 87 (1986); *Mucklow v. John Marshall Law Sch.*, 176 Ill.App.3d 886, (1988)); *see also Brooks v. McLean Cnty. Unit Dist. No. 5*, 2014 IL App (4th) 130503, ¶ 20 ("No separate and independent tort of willful and wanton conduct exists in Illinois.

Instead, it is viewed as an aggravated form of negligence.") (internal citation omitted). Count VI is dismissed without prejudice and with leave to amend.

### D

Finally, the IDOC Defendants argue they are entitled to qualified immunity because Plaintiff did not allege facts demonstrating a constitutional violation and cannot meet her burden to show that they violated clearly established law when they failed to prevent misconduct which they had no knowledge of. Defendants' qualified immunity argument turns on a disputed factual issue—whether Defendants were deliberately indifferent—which is not suitable for resolution at the pleading stage. *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) ("The facts essential to this defense typically emerge during discovery.").

**IT IS THEREFORE ORDERED:**

1. **Defendant Sokol's Motion to Dismiss [118] is GRANTED. The IDOC Defendants' Motion to Dismiss [119] is GRANTED IN PART and DENIED IN PART. Counts II, III, and VI are dismissed without prejudice.**

2. **Defendants Hughes, Hammers, Nottingham, Case, Eddy, Long, Taapken, Estes, Wright, Hickle, Christine, Neisler, Harvey, Mibbs, Cabarcas, Farrington, Trejos, Dillard, Brainard, Rentmeister, Browne, O'Neal, Mitchell, Clapp, Fairless, McGinnis, Young, Sokol, Worth, Pierce, and Venturini are DISMISSED WITHOUT PREJUDICE. The Clerk is directed to TERMINATE these Defendants.**

3. **Plaintiff may file an Amended Complaint by June 8, 2026. If Plaintiff does not do so, Defendants Hayes, Settles, Moore, and Bergschneider are directed to file an answer to Plaintiff's Complaint by June 29, 2026.**

*It is so ordered.*

Entered: May 8, 2026

s/Jonathan E. Hawley
U.S. District Judge

14